THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WILLIAM ASBURY, Plaintiff in Error.

*Opinion filed April 20, 1916.*

1. CRIMINAL LAW—*when element of accidental shooting is not involved.* In a manslaughter trial, where the accused claims he believed his companion was about to inflict serious injury upon him and that in self-defense he drew a revolver and struck him, whereupon the revolver was accidentally discharged and his companion killed by the bullet, the element of accidental shooting is not involved, since if the circumstances warranted his belief he would be justified in discharging the revolver intentionally, whereas if the circumstances did not justify his belief he would be responsible for the accidental discharge of the revolver resulting from his unlawful act in striking his companion.

2. SAME—*manslaughter does not include offense of assault with deadly weapon with intent to inflict injury.* The offense of manslaughter, wherein intent is not necessary to the crime, does not include the offense of assault with a deadly weapon with intent to inflict bodily injury, wherein the intent is essential, but the giving of an instruction stating the contrary is not harmful error, where the accused was found guilty of manslaughter and not of the lesser offense.

WRIT OF ERROR to the Circuit Court of Knox county; the Hon. HARRY M. WAGGONER, Judge, presiding.

MARSH & MARTIN, for plaintiff in error.

P. J. LUCEY, Attorney General, ADDISON J. BOUTELLE, State's Attorney, and D. E. DETRICH, (JOSIAH BABCOCK, of counsel,) for the People.

Mr. JUSTICE DUNN delivered the opinion of the court:

William Asbury was indicted for manslaughter and convicted and has sued out a writ of error to reverse the judgment.

The homicide occurred on the public square in the city of Galesburg between eight and nine o'clock in the evening of Sunday, August 22, 1915. The plaintiff in error and the deceased, Dudley Watkins, were negroes of about

the same age, sixteen or seventeen years, the plaintiff in error weighing about 115 pounds and Watkins about 160 pounds. They were walking together when the affray occurred. Several persons were in the vicinity, a few feet away, but it was after dark. No one saw the beginning of the affray or was able to give an accurate account of what occurred. Watkins was seen to raise his hand, and plaintiff in error's hand was immediately raised, striking over Watkins' arm. A shot was heard, and after a brief struggle Watkins sank to the ground and the plaintiff in error picked up his hat and went away. Watkins was found to be in a dying condition. The bullet had entered his body about one inch and a half to the left of the center line and one inch and a half or two inches above the clavicle and gone downward and backward, cutting the carotid artery, puncturing the apex of the left lung and leaving the body between the third and fourth ribs in the back. He was unconscious and was removed to the hospital and died there from the effects of the wound without regaining consciousness. No revolver was found on him.

The plaintiff in error's account of the shooting and the circumstances leading up to it begins with a meeting between himself and Watkins the night before at a district fair at the fair grounds, the particulars of which he did not relate. The next time he saw Watkins was near the southeast corner of the square immediately before the shooting. The plaintiff in error was standing there talking with two friends, when he saw some girls approaching from the west and started to meet them. Before reaching them he met Watkins, who said he wanted to see the plaintiff in error, and they turned and walked south. Nothing was said until the plaintiff in error asked Watkins if Watkins meant to call him a black son of a bitch out at the fair. Watkins then put his right hand in his hip pocket and with his left hand grabbed the plaintiff in error by the shoulder, when the plaintiff in error, being afraid of Watkins, jerked

out a revolver which he had in his shirt and hit at Watkins over his arm, intending to hit him on the head. Watkins threw up his left arm, which had been on the plaintiff in error's right shoulder, and the revolver was discharged. The plaintiff in error testified that he had never fired a revolver and did not purposely pull the trigger. After the revolver was discharged they started to wrestle, the plaintiff in error still holding the revolver in his hand. Watkins let go of him, and he stepped back, picked up his hat and went to his home. He told his mother what had happened and then went to the police station with his stepfather and uncle. The revolver was his step-father's, and he got it from under his pillow that evening about half-past seven o'clock and returned it there after the shooting.

One of the witnesses testified that the plaintiff in error told him in regard to the difficulty at the fair grounds the evening before, that some one threw some paper or something on Watkins and Watkins turned around and said, "You black son of a bitch, don't throw that stuff on me," and that the plaintiff in error said, "I didn't throw anything on you and for two cents I would hit you in the mouth," and turned around and walked away. The plaintiff in error testified that he had seen Watkins with a revolver on his person twice,—once about three weeks before this trouble and another time about a month and a half before that. The undertaker who prepared Watkins' body for burial discovered a bruise and swelling on the left cheek bone. Lawrence Fletcher testified that he rode home on the street car from the fair grounds on Saturday evening with Dudley Watkins. They arrived at the terminus of the line between eleven and twelve o'clock, and Watkins took a revolver out of his pocket and flourished it and said he ought to smoke up. The witness told this to Asbury the next day. Morris Fleming testified that he had a conversation about Willie Asbury with Watkins on Saturday evening between eight and nine o'clock, in which Watkins asked him if he had seen "Little Billy," and Fleming

said he had not and asked Watkins if he wanted to see him. Watkins replied that he was going to get the little black son of a bitch and had the "difference" to do it.

The defense of the plaintiff in error was that he was justified, at the time, in striking Watkins with the revolver in self-defense and that the shooting was accidental and without any intent on his part. It was a question for the jury whether the circumstances were such that the plaintiff in error might reasonably suppose that Watkins intended to make an attack on him and that it was necessary for him to defend himself. The fact that he had seen Watkins carrying a revolver and that he had been informed that he had one the night before, and Watkins' taking hold of him and putting his hand to his hip pocket, were circumstances which the jury might take into consideration, as well as the fact that the plaintiff in error an hour before had provided himself with a revolver, which he placed in his shirt bosom, that he met Watkins and voluntarily walked apart with him, and that he himself introduced the subject of the insult of the night before. After consideration of all the evidence we cannot say that the jury were not justified in arriving at the conclusion that the circumstances were not such as to make it apparent to a reasonable man that the plaintiff in error was in danger of any serious injury or to justify him in his attack on the deceased. The verdict cannot be set aside because it is not sustained by the evidence.

The court refused to permit the plaintiff in error, on his direct examination, to answer the question whether he feared he was in danger when Watkins grabbed his shoulder with his left hand and put his right hand in his pocket. On cross-examination, however, he did state that he was afraid of Watkins at that time, and therefore had the benefit of the testimony.

Objection is made to the refusal of several instructions which were asked by the plaintiff in error. Several of the

instructions were based upon the proposition that the jury might find the defendant not guilty if they believed that at the time of the shooting he was under reasonable apprehensions that Watkins intended to inflict upon him serious bodily injury and that he struck with the revolver in self-defense and that in striking with the revolver it was accidentally discharged. The jury were instructed properly in regard to the right of self-defense, but none of the instructions referred to the accidental discharge of the revolver. It was not error to omit this element, for if the circumstances were such as to create a reasonable apprehension of serious bodily harm to the plaintiff in error and he was not in fault then he was justified in shooting the deceased, and it was immaterial whether the discharge of the revolver was accidental or not. If the circumstances were not such as to justify such apprehension then he was not justified in hitting the deceased on the head with the revolver and he would be responsible for the results of the accidental discharge of the revolver while he was in the commission of this unlawful act. The element of accidental shooting does not enter into the case as a defense to the plaintiff in error.

Objection is made to the refusal of other instructions, but so far as they state propositions applicable to the case they were contained in instructions which were given.

The court gave the following instruction:

"The court instructs the jury in this case that while it is true that in the greater offense of manslaughter there is included the lesser offense of assault with a deadly weapon with intent to inflict bodily injury, yet if you believe from the evidence, beyond a reasonable doubt, that the defendant is guilty of manslaughter as defined in these instructions, then the jury would not be justified in finding the defendant guilty of the lesser offense of assault with a deadly weapon."

This instruction was wrong. The offense of manslaughter, wherein the intent is not necessary to the crime, does not include the offense of assault with a deadly weapon with intent to inflict bodily injury, wherein the intent is essential. It should not have been given but it did no injury to the defendant. He was not found guilty of the lesser offense.

There is no error in the record for which the judgment should be reversed, and it is affirmed.

*Judgment affirmed.*